# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | |
|---|---|
| **JANET E. DARDEN,** | |
| *Plaintiff*, | |
| v. | CAUSE NO. 3:24-CV-144-CWR-ASH |
| **MISSISSIPPI DEPARTMENT OF REHABILITATION SERVICES AND CHRISTOPHER HOWARD**, | |
| *Defendants.* | |

## ORDER

Before the Court is a motion for summary judgment filed by the Mississippi Department of Rehabilitation Services and Christopher Howard. Docket No. 35. For the reasons that follow, the motion will be granted in part and denied in part.

**I.  Factual and Procedural History**

Plaintiff Janet Darden, a Black woman, is a longtime employee of the Department of Rehabilitation Services. She began her tenure in 1985 and has received several promotions during her time with the Department. She currently works as a Deputy Bureau Director. This litigation stems from her pursuit of the Client Services Director ("DCS") position.

Ms. Darden first sought the DCS position in 2019. The position was not advertised, but Ms. Darden expressed her interest to Executive Director Christopher Howard. Director Howard did not select Ms. Darden for the position. Instead, he offered the position to Carol Elrod, a white woman.

Ms. Darden filed a charge with the Equal Employment Opportunity Commission in September 2019 alleging race discrimination and an unfair hiring process for the DCS position. That matter was closed in June 2020. *See* Docket No. 35-6. Ms. Darden did not file suit; she continued working at the Department in her current position.

Ms. Elrod worked as DCS from August 2019 until her resignation in December 2021. Ms. Darden did not express her interest to Director Howard after Ms. Elrod's resignation, yet she asserts that her interest was known based on her previous EEOC charge. Despite a suggestion from Ms. Lavonda Hart, Director of the Office of Vocational Rehabilitation, to conduct an open hiring process, Director Howard again chose not to post the position or solicit recommendations of interested persons.[1]

The Department announced that it filled the vacancy in February 2022. Again, Ms. Darden was not promoted. Director Howard chose Charles Fairley, a Black man, instead.

This suit followed. Ms. Darden brings claims of sex discrimination and retaliation under Title VII, violation of the Fourteenth Amendment, and tortious interference with employment under Mississippi law. The Department and Director Howard have moved for summary judgment on Ms. Darden's claims. The parties' respective positions are outlined below.

## II.   Legal Standard

A party may move for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

[1] Ms. Hart is the official tasked to assist the Executive Director by "recommend[ing] for appointment such personnel as may be necessary for the efficient performance of the functions of the office." Miss. Code Ann. § 37-33-15(c).

2

no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted). The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

**III.   Discussion**

The Department has moved for summary judgment on each of Ms. Darden's claims. The Court will discuss each in turn.

    **A.   Sex Discrimination**

To establish Title VII sex discrimination based on the failure to promote theory, the plaintiff must show that "(1) she was a member of a protected group, (2) she applied for a position for which she was qualified, (3) she was rejected, and (4) after she was rejected, the employer promoted, hired, or continued to seek a member of the opposite sex for the job." *Jones v. Flagship Intern.*, 793 F.2d 714, 724 (5th Cir. 1986).

When a position is not publicized, an employee need not apply to establish a prima facie case. *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003). "Instead the employee must show that the company had a duty or reason to consider her for the position." *Id.*

The Department asserts that summary judgment is appropriate because Ms. Darden did not apply for the DCS position in 2022. Assuming that Ms. Darden was not required to

apply, the Department also argues that summary judgment is appropriate because Ms. Darden was not clearly better qualified to be the DCS.

> **1.  There is a genuine dispute about whether the Department knew Ms. Darden was interested in the DCS position.**

The DCS vacancy was not advertised. Thus, the relevant question is whether the Department had "a duty or reason to consider [Ms. Darden] for the position." *Id.*

Ms. Darden submits that the Department and Director Howard knew of her interest in the DCS position based on her September 2019 EEOC charge. The Department maintains that it could not know she was interested because she did not express her interest to anyone after Ms. Elrod's departure. According to the Department, Ms. Darden's 2019 EEOC charge is irrelevant to whether it had reason to know of her interest because the vacancy occurred in December 2021.

Summary judgment is inappropriate because a reasonable jury could find that the Department knew of Ms. Darden's continued interest in the DCS position. Though Mississippi law grants the Executive Director the authority to appoint the DCS, Miss. Code Ann. § 37-33-159, the law may not shield Director Howard if he intentionally excluded Ms. Darden from consideration simply because she could not apply for the position. *See Sanders v. Miss. Dep't of Rehab. Servs.*, No. 3:20-CV-830-CWR-LGI, 2022 WL452402, at *2 (S.D. Miss. Feb. 14, 2022) (finding that employee "cannot be held accountable for failing to apply for a position that was never open to applications.")
Ms. Darden's 2019 EEOC charge could have provided the Department with notice of her interest in the position when the vacancy occurred in December 2021. This presents a fact dispute that should be resolved by the jury.

4

### 2. There is a genuine dispute about whether Ms. Darden was clearly better qualified than Mr. Fairley.

Ms. Darden has "raise[d] an inference of unlawful discrimination." *Blow v. City of San Antonio, Tex.*, 236 F.3d 293, 296-97 (5th Cir. 2001). So the burden now shifts to the Department to "proffer a legitimate, nondiscriminatory reason for the challenged employment action." *Id.* at 297. If the Department offers a legitimate, nondiscriminatory reason, Ms. Darden "must be offered the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citation modified).

The Department's proffered reason is simple. It asserts that it selected a "qualified candidate with a long working history" at the Department and a "management background." Docket No. 36 at 9. On its face, the Department's reason does not violate Title VII. Therefore, Ms. Darden must show that this reason is pretext for a discriminatory reason.

Ms. Darden may prove pretext by showing that the Department's proffered reason is false or "unworthy of credence," or that she was "clearly better qualified" than Mr. Fairley. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). Having reviewed the record, the Court finds that Ms. Darden has presented sufficient evidence to raise a genuine dispute about whether she was clearly better qualified than Mr. Fairley.

Mississippi classifies the DCS as a Deputy Administrator- Tier II position:

> Positions at this level manage resources and operations and achieve outcomes through the management of a diverse range of senior managers to ensure the delivery of services internally or externally for Tier I agencies. Operations for which they are accountable are broadly defined by statute, grant, or agency policy. The financial accountability is extensive within the overall scope of the agency. They are accountable for defining objectives, resource and organizational plans for the effective allocation and utilization of resources in the delivery of effective services. They typically manage multiple

>organizational units in the agency. They typically have regular interface with their peers in other agencies, the community served and the legislature. They are an active participant in the agency's leadership team.

Docket No. 35-11 at 4.

The Department argues that Ms. Darden was not better qualified because her current position falls two levels below Mr. Fairley's previous position and because she "performed at best at the minimum level to be successful." Docket No. 44 at 8. (citation omitted).

Ms. Darden notes that the record lacks evidence comparing Mr. Fairley's "skills, education, and experience to those of other interested employees. There were no scoring sheets, interview rounds, or comparative assessments produced" along with the Department's Position Statement. Docket No. 43 at 17; *see also* Docket No. 35-11. She adds that Mr. Fairley's experience with the Department "was primarily in facility management and workshop administration rather than direct client services." *Id.* at 18. In her view, the DCS position requires "extensive experience in client rehabilitation services, program oversight, and direct service leadership," qualities that are more aligned with her record of serving "in vocational rehabilitation leadership roles since the 1990s, working directly with clients, managing district teams, and overseeing service delivery in multiple regions." *Id.*

The Department's Office of Vocational Rehabilitation "provides services designed to improve economic opportunities for individuals with physical and mental disabilities through employment." Docket No. 35-11 at 2. Employes in this office "provide and coordinate services leading to employment which include assessment, vocational training, counseling and guidance, assistive technology, and job placement." *Id.* at 2.

Ms. Darden joined the Department as a Vocational Rehabilitation Counselor II in 1985. Since then, she has been promoted to: DRS-Counselor III, DRS-Counselor Supervisor, Assistant District Manager, and Deputy Bureau Director.[2]

Mr. Fairley joined the Department in 2011 as DRS-Facility Manager II for the AbilityWorks-Hattiesburg facility. He was promoted to DRS-Facility Manager III in 2013.[3] Mr. Fairley was promoted to a Regional Manager in 2021. He worked in that role until his promotion to DCS in 2022. Prior to joining the Department, Mr. Fairley worked as a Captain in the Mississippi Army National Guard, Director for the Jones County Rest Home, and President/Director of Eternity Hospice, Inc.

Having reviewed the parties' arguments, a reasonable jury could determine that Ms. Darden was clearly better qualified than Mr. Fairley considering her three decades of experience providing direct client care through the Office of Vocational Rehabilitation. Given the Department's focus, Ms. Darden's years of direct client care experience within the Office of Vocational Rehabilitation could have better prepared her to be the DCS. This remains possible even though Mr. Fairley held a higher position than Ms. Darden at the time of his promotion to DCS. At its core, this dispute weighs Ms. Darden's years of direct client care experience against Mr. Fairley's years of executive leadership experience. Rather than resolve this fact dispute for one party, the better course is to allow the parties to present their positions before a jury.[4] *See King v. Bd. of Trustees of State Inst. Of Higher Learning of Miss.*, No.

---

[2] The parties dispute the time Ms. Darden spent in "leadership roles." This is another fact better left for the jury to determine.

[3] The Facility Manager also falls under the Office of Vocational Rehabilitation, yet that position focuses more on facilities than direct client care. The Department submits Mr. Fairley received client-focused experience as Regional Manager.

[4] At trial, the Department may seek to establish the connection between the evaluations it has submitted and the decision made.

3:11-CV-403-CWR-FKB, 2014 WL 1276477, at *8-9 (S.D. Miss. Mar. 27, 2014) (leaving credibility determinations as to whom was better qualified to the jury; noting the record "presents a close call" because one employee had some strengths while other employee had other strengths.). The motion is denied on this ground.

B. Retaliation

1. A jury should determine whether Ms. Darden has met her prima facie case for retaliation.

The Department argues that summary judgment is appropriate because Ms. Darden failed to establish a causal connection between her EEOC charge in September 2019 and her failure to be promoted to DCS in February 2022.

To establish Title VII retaliation, Ms. Darden must show that: (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021).

Ms. Darden argues that the 2022 DCS vacancy presented the first meaningful opportunity for the Department to retaliate against her given the protection her current position affords her. She supports her argument by emphasizing that the DCS was not a position she could formally apply for, she had complained about the hiring process, and the position was filled within two months of becoming vacant. Viewing the evidence in the light most favorable to Ms. Darden, a reasonable jury could believe that the Department chose to retaliate against her for her 2019 EEOC charge by ensuring that she would not be considered for the DCS position in 2022. *See Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992)

8

(holding that two-year lapse in time was not fatal to plaintiff's attempt to establish prima facie case of retaliation).

### 2. A jury should determine whether the Department's reason for failing to hire Ms. Darden was pretext for discrimination.

The Department maintains that it has satisfied its burden of showing a legitimate nondiscriminatory reason by hiring Mr. Fairley, a qualified candidate. Thus, the burden returns to Ms. Darden to show that hiring Mr. Fairley was merely pretext for discrimination.

"An employee can establish pretext in the context of retaliation by showing that a discriminatory motive more likely motivated her employer's decision." *Saketkoo v. Adm'rs of Tulane Educ. Fund.*, 31 F.4th 990, 1002 (5th Cir. 2022) (citation modified). To survive summary judgment, "the plaintiff must show a conflict in substantial evidence on this issue." *Id.* (citation modified). The Court considers "numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id.* (citation modified).

Ms. Darden maintains that the Department's proffered reason is unworthy of credence because it has consistently denied promotions to women who challenge the Department's policies. She points to her coworkers Kenisha Black and Sandra Sanders as examples.[5] Still, the Department urges that Director Howard was entitled to fill the position

---

[5] *See Black v. Miss. Dep't of Rehab. Servs.*, No. 3:23-CV-643-KHJ-LGI, 2021 WL 1948468 (S.D. Miss. May 14, 2021), *aff'd* No. 22-60409, 2023 WL 4341459 (5th Cir. July 5, 2023); *Sanders v. Miss. Dep't of Rehab. Servs.*, No. 3:20-CV-830-CWR-LGI, 2022 WL 452402 (S.D. Miss. Feb. 14, 2022); and *Black v. Miss. Dep't of Rehab. Servs.*, No. 3:23-CV-426-DPJ-ASH (S.D. Miss. Dec. 27, 2024).


with a qualified individual of his choosing. And Director Howard stands by his decision that Mr. Fairley was simply the better candidate for the position.

The Court believes the better course is to submit this issue to the jury as it cannot resolve this dispute without accessing the parties' relative credibility. *See Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 440 (5th Cir. 2022). Thus, summary judgment will be denied on this ground.

### C.    Fourteenth Amendment

Ms. Darden alleges that Director Howard violated her Fourteenth Amendment rights by discriminating against her based on her sex. The Department argues that Ms. Darden has abandoned this claim by failing to respond to its argument for summary judgment. The Court agrees. *See, e.g., Campbell v. Atl. Scaffolding Co.*, No. 1:12-CV-405-LG-JMR, 2014 WL 2684291, at *12 (S.D. Miss. June 13, 2014). As a result, the motion is granted on this ground.

### D.    Tortious Interference with Employment

"Tortious interference with employment requires (1) intentional and willful acts (2) calculated to cause damage to plaintiff in his lawful business (3) that were done with malice and (4) resulted in actual damage and loss." *Jones v. Gulf Coast Restaurant Grp.*, 8 F.4th 363, 369 (5th Cir. 2021) (citing *McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 976 (Miss. 2001)).

Ms. Darden submits that Mr. Fairley intentionally blocked her from consideration for the DCS position by failing to post the DCS position and seek a recommendation from Director Hart. The Department reinforces its stance that Mississippi law did not obligate Director Howard to take either action. It adds that Director Howard was unaware of the statute indicating that he "shall" consult with the Director of OVR, Ms. Hart until litigation commenced.

Summary judgment is also improper on this point. Ms. Darden alleges that Director Howard's actions were taken with the intent to retaliate against her for previously filing an EEOC charge over the DCS position. If proven to be true, a reasonable jury could find that his actions were taken with malice. As a result, the motion is denied on this ground.

## IV.   Conclusion

The motion for summary judgment is granted in part and denied in part. The motion is granted as to Ms. Darden's Fourteenth Amendment claim. The motion is denied as to Ms. Darden's Title VII, and Tortious Interference with Employment claims. The Court will contact the parties to coordinate a status conference regarding a new trial setting.

**SO ORDERED**, this the 24th day of July, 2025.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE